IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Hunter Fountain, | Case No. 8:23-cv-02621-JDA |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Robert Fountain, Pablo Da Silva Rocha, | |
| Defendants. | |

This matter is before the Court on a motion by Defendant Robert Fountain ("Robert") for summary judgment. [Doc. 49.] Plaintiff filed this action on May 4, 2023, in the Anderson County Court of Common Pleas, asserting various claims related to an alleged sexual assault of Plaintiff by Defendant Pablo Da Silva Rocha ("Pablo"). [Doc. 1-1.] Robert removed the action to this Court on June 12, 2023, on the basis of diversity jurisdiction. [Doc. 1.] Plaintiff filed an Amended Complaint on June 26, 2023. [Doc. 11.]

On July 8, 2024, Robert filed his motion for for summary judgment. [Doc. 49.] On July 22, and August 2, 2024, Plaintiff filed a response opposing the motion, and Robert filed a reply. [Docs. 51; 67; *see* Docs. 52; 53.] The motion is ripe for review.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

On November 26, 2022, the Saturday after Thanksgiving, ten members of the Fountain family were visiting together at Robert's Anderson, South Carolina home (the "House"). [Doc. 49-1 ¶ 2.] Among others attending were Robert; Pablo, Robert's new husband; Plaintiff, who is Robert's great nephew; Plaintiff's father, Joshua Fountain ("Joshua"); and Plaintiff's twin brother Joshua Bryce Fountain ("Bryce"). [*Id.* ¶¶ 3, 5, 6, 7, 9; Doc. 52 at 13:5–6.] Plaintiff and Bryce were both 17 years old during the visit. [Doc. 49-1 ¶ 7.]

The group had arrived before noon, but by the early evening, Joshua and others had left for the night to go to a hotel or had gone to bed. [Doc. 52 at 23:6–11, 25:19–22, 51:2–3.] Multiple adults, including Pablo, had been serving Plaintiff and Bryce alcoholic beverages that day or allowing them to drink them. [Docs. 49-1 ¶ 11; 52 at 38:22, 39:2–11, 40:4–16, 50:8–13, 50:22–25; 51:18–52:21.] By around 9:00 p.m., Robert noticed that Plaintiff appeared to be intoxicated, and he saw Plaintiff walk into a room and fall onto Pablo, who was sitting on a couch. [Docs. 49-2 at 14:18–22; 52 at 26:11–13.] Robert had been drinking as well, was dozing off in his recliner, and decided to go to bed soon after. [Doc. 52 at 28:6–23.]

The House has one bedroom downstairs and four bedrooms upstairs. [Doc. 49-1 ¶ 8.] Once it became clear that Plaintiff was intoxicated, Pablo helped Plaintiff to a bed in the downstairs bedroom, which has two twin beds such that Plaintiff and Bryce could share the room. [Doc. 52 at 39:12–23, 87:20–25, 88:14–15, 88:19–20.] Sometime later, however, Pablo moved Plaintiff to an upstairs bedroom. [*Id.* at 88:1–91:23.]

Plaintiff woke up around 6 or 6:15 the next morning and realized that Pablo was in the room rubbing Plaintiff's penis, at first over Plaintiff's boxer shorts and then under his boxer shorts. [Doc. 49-2 at 28:4–11, 30:4–7, 31:12–17.] Not knowing what to do, Plaintiff rolled onto his side away from Pablo hoping Pablo would stop touching him. [*Id.* at 29:18–30:3, 31:18–20, 32:2–4, 32:18–22.] After the assault had gone on for about three or four minutes, Plaintiff eventually opened his eyes, looked at Pablo, and "said good morning, Pablo, what's up, like what are you doing." [*Id.* at 31:16–32:5.] Pablo just said he had come in to check on Plaintiff, and he walked away.[1] [*Id.* at 32:5–7.] Plaintiff then went to the bathroom and then went downstairs and told Bryce what had occurred. [*Id.* at 32:8–12; 52 at 43:4–8.] When Joshua returned to the house, Plaintiff told him as well. [Doc. 52 at 55:5–16.]

In this action, Plaintiff asserts claims against Pablo for battery and intentional infliction of emotional distress and against Robert for negligence based on Robert's failure to protect Plaintiff and warn him that Pablo was a danger to him. [*Id.* ¶¶ 28–40.] Plaintiff seeks actual compensatory and consequential damages, punitive damages, court costs, interest, and any other relief that the Court deems equitable and proper. [*Id.* at 6–7.]

---

[1] Pablo denies the assault occurred. [Doc. 19 ¶ 18; *see* Doc. 11 ¶ 21.] Pablo testified that he moved Plaintiff to the upstairs room because Plaintiff was laughing a lot and falling off the twin bed in the downstairs room. [Doc. 52 at 88:1–15, 91:16–23.]. Pablo testified that in the upstairs room, he put two beds together so Plaintiff would not fall off. [*Id.* at 89:25–90:6, 91:20–23.] Pablo also testified that although he did enter Plaintiff's room to check on him at approximately the time Plaintiff alleges the assault occurred, he was just checking on Plaintiff to make sure he was okay given that he had been so drunk the night before. [*Id.* at 93:6–21.]

3

## **APPLICABLE LAW**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id*. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id*. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

At bottom, Robert argues that he is entitled to summary judgment on Plaintiff's negligence claim against him based on his failure to warn Plaintiff that Pablo was a potential danger to him and to protect Plaintiff from being sexually assaulted by Pablo because Robert had no reason to believe that Pablo would assault Plaintiff. [Doc. 49.] The Court agrees.

To establish a cause of action for negligence in South Carolina,[2] a plaintiff "must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the

---

[2] "When sitting in diversity, a federal court must apply the law of the forum state as it is interpreted by the state's highest court." *Moore v. Equitrans, L.P.*, 27 F.4th 211, 220 (4th Cir. 2022) (internal quotation marks omitted).

plaintiff; and (4) damages proximately resulted from the breach of the duty." *Thomasko v. Poole*, 561 S.E.2d 597, 599 (S.C. 2002). "Without . . . a duty, there can be no actionable negligence." *Rogers v. S.C. Dep't of Parole & Cmty. Corr.*, 464 S.E.2d 330, 332 (S.C. 1995). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Jackson v. Swordfish Invs., L.L.C.*, 620 S.E.2d 54, 56 (S.C. 2005).

South Carolina law does not recognize a "general duty to control the conduct of another or to warn a third person or potential victim of danger." *Faile v. S.C. Dep't of Juv. Just.*, 566 S.E.2d 536, 546 (S.C. 2002). South Carolina courts "recognize five exceptions to this rule: 1) where the defendant has a special relationship to the victim; 2) where the defendant has a special relationship to the injurer; 3) where the defendant voluntarily undertakes a duty; 4) where the defendant negligently or intentionally creates the risk; and 5) where a statute imposes a duty on the defendant." *Doe ex rel. Doe v. Wal-Mart Stores, Inc.*, 711 S.E.2d 908, 911–12 (S.C. 2011). "The defendant may have a common law duty to warn potential victims under the 'special relationship' exception when the defendant 'has the ability to monitor, supervise and control an individual's conduct' and when 'the individual has made a specific threat of harm directed at a specific individual.'" *Doe v. Marion*, 645 S.E.2d 245, 250 (S.C. 2007).

In this case, Plaintiff has not forecasted any evidence that Pablo ever made any specific threat to harm him. Thus, nothing that Robert knew about Pablo created a duty to warn Plaintiff that Pablo was a danger or to protect Plaintiff from him. *See Roe v. Bibby*, 763 S.E.2d 645, 647, 649–50 (S.C. Ct. App. 2014) (holding that the defendant could not be held liable under the special relationship exception for her husband's

sexual abuse of female minors while they were visitors in their home; one reason the defendant could not be liable under that exception was that although the defendant knew that her husband had previously molested their teenage daughter, there was no evidence that the husband had "made a distinct, specific, and overt threat of harm towards" the female minors).

Citing *Marcum v. Bowden*, 643 S.E.2d 85, 86 (S.C. 2007), Plaintiff argues that Robert had a "special relationship" with Plaintiff within the meaning of the exception because Robert served alcohol to Plaintiff or caused it to be served to him when Plaintiff was only 17 years old.  [Doc. 51 at 14–16.]  *Marcum* provides that "an adult social host who knowingly and intentionally serves, or causes to be served, alcoholic beverages to a minor under 18 is liable to both the guest and third parties."  643 S.E.2d at 86 n.1.  However, *Marcum* also explicitly provides that liability for serving alcohol to minors is limited to "damages *proximately caused* by the host's service of alcohol."  *Id.* at 90 (emphasis added).

Establishing proximate cause requires showing both causation in fact, which "is proved by establishing the injury would not have occurred 'but for' the defendant's negligence," and legal causation, which "is proved by establishing foreseeability." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 662 (S.C. 2006).  "Foreseeability is determined by looking to the natural and probable consequences of the complained of act, although it is not necessary to prove that a particular event or injury was foreseeable."  *Id.*  "The defendant's negligence does not have to be the sole proximate cause of the plaintiff's injury; instead, the plaintiff must prove the defendant's negligence was at least one of the proximate causes of the injury."  *Id.*  "The question

7

of proximate cause is ordinarily one of fact for the jury, as to which the trial court's only function is to inquire whether particular conclusions are the only reasonable inferences to be drawn from the evidence." *Carter v. Anderson Mem. Hosp.*, 325 S.E.2d 78, 80 (S.C. Ct. App. 1985).

In this case, although it certainly may have been foreseeable to Robert that allowing Plaintiff to drink alcohol during the family get-together could leave him intoxicated—and therefore vulnerable—it still would not be foreseeable that Pablo would try to take advantage of that vulnerability by sexually assaulting the boy in his sleep or committing any other malicious act toward him. *See Stone v. Bethea*, 161 S.E.2d 171, 173–74 (S.C. 1968) ("The general rule of law is that when, between negligence and the occurrence of an injury, there intervenes a willful, malicious, and criminal act of a third person producing the injury, but that such was not intended by the negligent person and could not have been foreseen by him, the causal chain between the negligence and the accident is broken."); *Goode v. St. Stephens United Methodist Church*, 494 S.E.2d 827, 835 (S.C. Ct. App. 1997) (affirming summary judgment for the defendant in part based on lack of proximate cause because the defendant had no notice the attack on the plaintiff would occur, and thus it also had no reason to foresee that a failure to warn or protect the plaintiff would result in an intentional attack on the plaintiff by third parties); *Shepard v. S.C. Dep't of Corr.*, 385 S.E.2d 35, 37 (S.C. Ct. App. 1989) ("The test [of foreseeability for purposes of legal causation] is whether the intervening [criminal] act and the injury resulting therefrom are of such a character that the author of the primary negligence should have reasonably anticipated them in light of the attendant circumstances."). Here, there is no indication in the record that Pablo

8

had ever previously harmed anyone or expressed an inclination to do so, let alone a minor. In the absence of such evidence, no reasonable jury could find that the assault was a foreseeable consequence of Robert's serving Plaintiff alcohol.[3] Accordingly, no reasonable jury could conclude that Plaintiff's being served alcohol was a proximate cause of his injuries.

Nor does Plaintiff fare any better under a premises liability theory. "To establish negligence in a premises liability action, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) defendant's breach of that duty by a negligent act or omission; and (3) damage proximately resulting from that breach of duty." *Singleton v. Sherer*, 659 S.E.2d 196, 200 (S.C. Ct. App. 2008). "The nature and scope of duty in a premises liability action, if any, is determined based upon the status or classification of the person injured at the time of his or her injury." *Id.*

A social guest, which was what Plaintiff was in Robert's home, is a licensee. *Vogt v. Murraywood Swim & Racquet Club*, 593 S.E.2d 617, 619 (S.C. Ct. App. 2004) (explaining that a licensee is "a person who is privileged to enter upon land by virtue of the possessor's consent" (internal quotation marks omitted)). The duties of a landowner to a licensee are "to use reasonable care to (a) discover him and avoid injury to him in carrying on activities upon the land; and (b) warn him of any concealed dangerous

---

[3] Plaintiff appears to argue that a reasonable jury could find that because Pablo was gay, had engaged in consensual sex with multiple partners, and had traveled extensively internationally, it was foreseeable that he would sexually assault his husband's minor great-nephew while the young man was sleeping in their home. [*See, e.g.*, Doc. 51 at 20–22.] In the absence of any evidence that Pablo had ever previously committed a malicious act or even shown any inclination to harm anyone, there is no basis in law or common sense for such an inference. *Stone*, 161 S.E.2d at 173–74.

conditions or activities which are known to the possessor." *Id.* (internal quotation marks omitted). Additionally, although "a property owner is not an insurer of the safety of children on his premises," "a property owner may owe a heightened duty to children beyond that owed to adult licensees or trespassers" in some circumstances, such as "where a dangerous instrumentality is involved." *Dennis by Evans v. Timmons*, 437 S.E.2d 138, 140 (S.C. Ct. App. 1993).

In this case, even assuming that Robert owed the 17-year-old Plaintiff a heightened duty beyond what would be owed to an adult social guest, Plaintiff has not forecasted any evidence that Robert knew Pablo posed any danger to Plaintiff. As noted, Plaintiff has not forecasted any evidence that Pablo had ever abused anyone or that he had a proclivity for abusing anyone, let alone an underage relative of his new husband. With Robert having no basis for believing that Pablo posed a danger to Plaintiff, Robert had no duty to warn Plaintiff that he was a danger or to protect Plaintiff from Pablo. *Cf. Dennis*, 437 S.E.2d at 141 (holding that when an eight-year-old on the defendant's property was injured when a 13-year-old threw a screwdriver and hit the boy in the eye, the defendant was not liable for failing to properly supervise and protect the children because the defendant did not know that the 13-year-old had a "proclivity for propensity for the specific dangerous activity which caused the harm").

In sum, Plaintiff has not forecasted evidence adequate to create a genuine dispute of material fact as to his negligence claim against Robert under either a special relationship theory or a premises liability theory. The Court therefore grants Robert's motion for summary judgment.

**CONCLUSION**

For the reasons discussed, Defendant Robert Fountain's motion for summary judgment [Doc. 49] is GRANTED, and Plaintiff's claim against him is DISMISSED with prejudice.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

February 19, 2025
Greenville, South Carolina